■ BERTHA WILLIAMS et al., Respondents, v CITY OF NEW YORK, Appellant, et al., Defendants. [758 NYS2d 349] —In a consolidated action, inter alia, to recover damages for wrongful death, the defendant City of New York appeals from a judgment of the Supreme Court, Queens County (Kitzes, J.), dated August 18, 2000, which, upon a jury verdict, and the denial of its motion, among other things, pursuant to CPLR 4404 to set aside the verdict as against the weight of the evidence, is in favor of Bertha Williams and Tennille Williams and against it in the principal sum of $5,260,252, and is in favor of Madeline Guerzon, Christopher Guerzon, Steven Guerzon, Richard Guerzon, and Mark Guerzon and against it in the principal sum of $8,975,625.

Ordered that the judgment is reversed, on the law, with costs, that branch of the motion which was to set aside the jury verdict is granted, and the complaints are dismissed.

On November 13, 1989, New York City police detectives Keith Williams and Richard Guerzon were executing a "takeout" order which required the transportation of a prisoner from Rikers Island Correctional Facility to the Queens County District Attorney Detective Squad (hereinafter detective squad). The detectives placed the prisoner in the detective squad locker room (hereinafter the locker room) where, handcuffed by one hand to a mounted pipe which had been installed for that purpose, he stole a service revolver from an-

other detective's locker. While in transit back to Rikers Island, the prisoner, handcuffed in the rear of the car, shot and killed both detectives on the Grand Central Parkway.

The decedents' survivors commenced separate wrongful death actions pursuant to General Municipal Law § 205-e, alleging that the decedents' deaths resulted from violations of certain governmental requirements. The actions were consolidated by order of the Supreme Court, Queens County, dated August 10, 1992. The plaintiffs' theory of recovery was that the locker room was improperly used as a prisoner detention area and that the prisoner had gained access to the locker containing the gun because its lock was either open or defective. The jury found the defendant City of New York liable for having violated (1) a Police Administrative Guide requirement that lockers be placed in areas accessible only to members of the service, (2) a Police Patrol Guide requirement that lockers be secured with combination locks, (3) Labor Law § 27-a, requiring a public sector employer to furnish its employees with a safe place of employment, and (4) Administrative Code of the City of NY §§ 27-127 and 27-128, which requires that buildings be maintained in a safe condition and holds the owner responsible for the safe maintenance of the building.

Thereafter, the City moved, inter alia, to set aside the verdict, urging that the proof did not establish a violation of any statutory mandate as required under General Municipal Law § 205-e. The Supreme Court denied the motion. On appeal, the City argues, inter alia, that the jury improperly predicated the City's liability on Labor Law § 27-a (3) (a) (1). We agree.

General Municipal Law § 205-e "authorizes recovery for negligent failure to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements" of any governmental department (*Galapo v City of New York*, 95 NY2d 568, 572 [2000] [internal quotation maks omitted]). "A plaintiff seeking to recover under section 205-e must identify a statute or ordinance with which the defendant failed to comply and must, in addition, set forth facts from which it may be inferred that the defendant's negligence directly or indirectly caused harm to the police officer" (*Aversa v New York City Hous. Auth.*, 233 AD2d 217, 218 [1996]). Absent negligent failure to comply with a statutory or regulatory requirement, the firefighter's rule, which applies to police officers, prohibits the plaintiffs from recovering damages for negligence in the creation of the condition allegedly giving rise to the injury (*see Santangelo v State of New York*, 71 NY2d 393 [1988]; *Flynn v City of New York*, 258 AD2d 129, 134 [1999]).

The plaintiffs concede that the New York City Police Department Administrative Guide and the Police Department Patrol Guide cannot serve as predicates for liability under General Municipal Law § 205-e (*see Galapo v City of New York, supra; see also Desmond v City of New York,* 88 NY2d 455 [1996]), and therefore, the verdict cannot be sustained based upon the City's alleged failure to comply with those requirements. Nor can the verdict be sustained under Administrative Code §§ 27-127 and 27-128. Section 27-127 requires, generally, that buildings and their parts be maintained in a safe condition, and section 27-128 establishes owner responsibility for the safe maintenance of buildings. The proof at trial did not, as a matter of law (*see Cohen v Hallmark Cards,* 45 NY2d 493, 499 [1978]; *Nicastro v Park,* 113 AD2d 129 [1985]), establish that the locker room was maintained in an unsafe condition within the meaning of those sections of the Administrative Code (*see Taylor v Park Towers S. Co.,* 293 AD2d 668 [2002], *lv denied* 98 NY2d 612 [2002]; *Lane v Fisher Park Lane Co.,* 276 AD2d 136, 141-142 [2000]; *Beck v Woodward Affiliates,* 226 AD2d 328, 330 [1996]). The decedents were not injured at the premises by any condition which could be described as arising from a failure to maintain the premises (*see Aversa v New York City Hous. Auth., supra*). The provisions of the Administrative Code requiring buildings to be maintained in a safe condition simply do not apply.

Labor Law § 27-a (3) (a) (1) provides, in relevant part, that every employer, including a public authority or governmental agency, shall furnish its employees *"employment and a place of employment* which are free from recognized hazards that are causing or likely to cause death or serious physical harm * * * and which will provide reasonable and adequate protection to the lives, safety or health of its employees" (emphasis added). Labor Law § 27-a (3) (a) (1) was enacted to "provide individuals working in the public sector with the same or greater workplace protections provided to employees in the private sector under OSHA" (*Hartnett v New York City Tr. Auth.,* 86 NY2d 438, 442-443 [1995], citing Governor's Approval Mem, 1980 NY Legis Ann, at 285; *see Desmond v City of New York, supra; see also* 29 USC § 654). The City argues that since the decedents were not harmed in the locker room, the plaintiffs cannot claim that they were harmed by their "place of employment" and, therefore, there was no violation of the Labor Law. The respondents counter that, although the shootings did not occur in the locker room, the fact that the locker room was used to detain prisoners allowed the prisoner to steal the service revolver from a locker, which he then used to shoot the decedents

on the Grand Central Parkway. Thus, the decedents were not provided with a safe place of employment because the use of the locker room, which led to their deaths, constituted a violation of the Labor Law.

The record does not support the respondents' claim that the locker room was an unsafe place of employment within the meaning of Labor Law § 27-a (3) (a) (1) (see *Hartnett v New York City Tr. Auth., supra*; *Sciangula v City of New York,* 250 AD2d 833 [1998] [police officer's claim that, following his recuperation from a wrist injury, he was given an inappropriate work assignment where he was attacked by a prisoner and injured, did not fall within the protections of the Labor Law as failing to have furnished him with a place of employment free from recognized hazards]). The alleged hazard was one based not upon a physical condition in the locker room or defect in the facility itself, but rather, upon the practice of holding prisoners in proximity to lockers where firearms were kept. Under the plaintiffs' theory, absent the prisoner, there was no unsafe condition in the room. Labor Law § 27-a (3) (a) (1) encompasses physical and environmental hazards in the workplace, not the use to which a room is put.

Police officers routinely face special hazards and perform functions which put them at a heightened risk of injury (see *Flynn v City of New York, supra* at 135). Contrary to the argument of our dissenting colleagues, police officers, by the very nature of their duties, which are inherently dangerous, cannot be furnished a "hazard-free employment" or "hazard-free place of employment." In this case, the record reflects that the New York City Police Department (hereinafter the NYPD) routinely published security memoranda and conducted safety meetings reminding officers of the security procedures to be followed when detaining prisoners in the locker room. Among other requirements, lockers were to be secured with combination locks, a detective was to remain with the prisoner at all times, and the prisoner was required to be cuffed to the steel bar by both hands at all times. Unlike our dissenting colleagues, who regard this evidence of good safety practice as supportive of the inference that there was a "recognized hazard" within the meaning of Labor Law § 27-a (3) (a) (1), we view such evidence as reflective of a proper approach to workplace safety on the part of the NYPD. Safety procedures were promulgated, the officers were routinely reminded of them, and the locker room was equipped with means to secure the prisoner in a manner which would insure the officers' safety. The hazard presented by the necessity to transport and detain prisoners was suf-

ficiently and properly diminished by the City so as to fulfill its duty to the employees under Labor Law § 27-a (3).

With respect to establishing a practical or reasonable connection between the alleged lack of safety of the workplace and the decedents' injuries (*see Dillon v City of New York,* 238 AD2d 302 [1997]), the respondents argue that the prisoner's conduct was a foreseeable consequence of the use of the locker room as a detention area and cannot be considered an independent or superseding cause of their injuries since it was foreseeable (*see Bell v Board of Educ. of City of N.Y.,* 90 NY2d 944 [1997]). However, as the respondents did not meet their initial burden of establishing that the City negligently failed to comply with the Labor Law requirement that it provide employees with a "safe place of employment," the issue of foreseeability of the intervening act need not be reached.

Contrary to the assertion in the dissent, *Balsamo v City of New York* (287 AD2d 22 [2001]), does not provide that Labor Law § 27-a is to be accorded an expansive interpretation in order to effectuate the goal of General Municipal Law § 205-e. Where, as here, there was no negligent failure to comply with a statute or ordinance, there can be no recovery under General Municipal Law § 205-e and, of course, in the absence of actionable negligence, there is no comparative fault analysis. The judgment in favor of the plaintiffs must be reversed, and the complaints dismissed. Adams, Townes and Cozier, JJ., concur.

H. Miller, J.P., dissents and votes to modify the judgment appealed from by remitting the matter for a new trial on the issue of damages unless the plaintiffs stipulate to reduce the verdict, with the following memorandum, in which Crane, J., concurs.

On November 13, 1989, in the course of their duties, New York City Police detectives Keith Williams and Richard Guerzon were killed when a prisoner they were transporting shot them with a service revolver he had obtained from a detective's locker while being detained in a locker room. The prisoner had been handcuffed by one hand to a pipe mounted on a table in the locker room. This was done in anticipation of the prisoner taking a polygraph test. The decedents' survivors commenced this action against, among others, the City of New York, asserting a cause of action pursuant to General Municipal Law § 205-e based on violations of the Police Department Administrative Guide and Patrol Guide requirements, Administrative Code of the City of NY §§ 27-127 and 27-128, and Labor Law § 27-a. The matter was tried and the jury found, by special interrogatories which addressed each theory of liability sepa-

rately, that the City was liable for violating the predicate statutes and that these violations were a direct or indirect cause of the occurrence.

I agree with my colleagues in the majority that the Police Department Administrative Guide and Patrol Guide requirements may not serve as predicates for liability under General Municipal Law § 205-e and that Administrative Code §§ 27-127 and 27-128 were not violated in this case. However, I respectfully dissent from my colleagues' determination that the decedents' workplace was not unsafe within the meaning of Labor Law § 27-a.

General Municipal Law § 205-e (1) imposes liability where injury to a police officer "occurs directly or indirectly as a result of any * * * culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes" or other provisions of law. For a plaintiff to recover damages for personal injuries under General Municipal Law § 205-e, the plaintiff must identify the particular statute allegedly violated by the defendant and establish a reasonable or practical connection between a violation and the injury sustained (see *Zanghi v Niagara Frontier Transp. Commn.*, 85 NY2d 423, 441 [1995]; *Balsamo v City of New York*, 287 AD2d 22, 25-26 [2001]; *Abbadessa v City of New York*, 269 AD2d 341 [2000]).

In my view, the plaintiffs have a viable cause of action for a violation of Labor Law § 27-a, specifically the general duty clause of section 27-a (3) (a), which provides that: "[e]very employer shall: (1) furnish to each of its employees, *employment and a place of employment* which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to its employees and which will provide reasonable and adequate protection to the lives, safety or health of its employees; and (2) comply with the safety and health standards promulgated under this section." (Emphasis added.) A plain reading of the general duty clause (hereinafter the clause) reveals that its focus is on an employer's duty to provide for the safety of its employees. The central thrust of the clause, contained in clause (1), concerns "recognized hazards" that cause or may cause "death or serious physical harm to * * * employees." (Labor Law § 27-a [3] [a] [1].) The second part of the clause, clause (2), mandates that employers "comply with [promulgated] safety and health standards." (Labor Law § 27-a [3] [a] [2].) Thus, taken together, the general duty clause is exclusively focused on an employer's duty to prevent hazardous conditions from developing, either in employment or the place of employment. At issue in this case is whether the decedents'

employer, by detaining prisoners in a locker room where they could acquire firearms, failed to render its workplace free of a recognized hazard that was causing or likely to cause death or serious physical harm.

The term "recognize" means "to be aware of the significance of" (Webster's New World Dictionary of American English 1121 [3d College ed 1988]). Therefore, to constitute a "recognized hazard," the dangerous potential of a condition or activity must actually be known to an employer. In this case, the City had actual knowledge of the hazard presented by using the locker room to detain prisoners. There were, for example, ongoing complaints to superiors of the inadequacy of the locker room for holding prisoners; directives stating that the lockers, where firearms were kept, were required to be secured under the threat of discipline; at least 20 detective squad meetings at which prisoner security was discussed; testimony that it was general practice to leave prisoners in the locker room without supervision; testimony that prisoners not infrequently, such as during meals, were handcuffed by only one hand to the metal pipe mounted to the table. It is reasonable to infer from the presence of these safety precautions, concerns, and lax procedures, that the City was aware that the use of the locker room for detaining prisoners was hazardous, not only because it was not customary to detain prisoners in such an area (prisoners usually were detained in a cell or cage), but also, and more important, because prisoners were detained in a room in close proximity to firearms.

The majority's position that, in this case, the City fulfilled its duty to its employees under Labor Law § 27-a (3) by, inter alia, promulgating security memoranda, conducting safety meetings, and requiring the cuffing of prisoners by both hands to the steel bar in the locker room ignores the obvious fact that an accident did occur in this case, despite all those facts. In preparation for a polygraph test, the prisoner, who was handcuffed by one hand to the mounted pipe, obtained and concealed on his person a firearm that he later used to fatally shoot the police officers. Whether the accident could have been avoided by, for example, closer monitoring of the prisoner, or by handcuffing him by two hands to the mounted pipe—a practice not strictly followed—is an issue of comparative fault and, under General Municipal Law § 205-e, cannot enter into the discussion (see Mullen v Zoebe, Inc., 86 NY2d 135, 142-144 [1995]; Warner v Adelphi Univ., 240 AD2d 730 [1997]; see also Raquet v Braun, 90 NY2d 177, 184 [1997]).

Furthermore, this Court's decision in Sciangula v City of

*New York* (250 AD2d 833 [1998]) does not stand for the proposition, as the majority implies, that the clause protects employees only from hazardous physical and environmental conditions in the workplace. In *Sciangula*, this Court concluded that a police officer's claim that "following his recuperation from an injury he was returned to duty in an inappropriate work assignment where he was attacked by a prisoner and injured, does not fall within the ambit of Labor Law § 27-a (3)." *Sciangula* (*supra*) implies that the common threat of violent encounters between prisoners and police officers does not constitute a hazard within the meaning of Labor Law § 27-a. In this case, however, the employment and place of employment were unsafe not because the officers faced the general risk of being injured by a prisoner. It was unsafe because of a detention practice which posed the specific risk that a prisoner would acquire and use a firearm to physically harm a police officer. The improper detention of prisoners created a hazard in addition to those normally faced by police officers, or, at a minimum, aggravated the existing inherent hazard of potential violence that exists between police officers and prisoners. This, in my view, violated the clause requiring an employer to furnish a hazard-free "employment," not merely a hazard-free "place of employment."

In light of the expansive interpretation which must be accorded to General Municipal Law § 205-e (*see Gonzalez v Iocovello,* 93 NY2d 539 [1999]; *Schiavone v City of New York,* 92 NY2d 308, 317 [1998]) and to Labor Law § 27-a in effectuating the goal of General Municipal Law § 205-e (*see Balsamo v City of New York, supra*), and the clear legal duty imposed on public employers under Labor Law § 27-a to provide a safe workplace for their employees, I conclude that the routine practice of detaining prisoners in a locker room containing firearms presented a "recognized" hazard within the meaning of Labor Law § 27-a.

Since a statutory violation has been demonstrated, the only remaining question is whether there is "a practical or reasonable connection between the violation and the injury or death of the police officer" (*Abbadessa v City of New York, supra* at 341; *see Mullen v Zoebe, supra* at 140). In an action under General Municipal Law § 205-e, "it is not necessary to demonstrate the same degree of proximate cause as is required in a common-law negligence action" (*Dillon v City of New York,* 238 AD2d 302, 303 [1997]; *see Zanghi v Niagara Frontier Transp. Commn., supra* at 441; *Giuffrida v Citibank Corp.,* 288 AD2d 433, 434 [2001], *lv granted* 98 NY2d 611 [2002]; *Brasca v Jes-*

*sup,* 258 AD2d 490 [1999]). Here, it is undisputed that the firearm the prisoner acquired in the locker room in which he was detained was used, shortly thereafter, to fatally shoot the police officers during the prisoner's transport. It is irrelevant that the shootings took place outside the area where the violation occurred, since the "criterion is simply whether the connection between the statutory violation and the resultant injury is sufficiently 'practical or reasonable' " (*O'Connell v Kavanagh,* 231 AD2d 29, 34 [1997]; *see Jantzen v Edelman of N.Y.,* 221 AD2d 594 [1995]), or that there was an intervening criminal act "[w]hen the intervening, intentional act of another is itself the foreseeable harm" (*Kush v City of Buffalo,* 59 NY2d 26, 33 [1983]; *see Lusenskas v Axelrod,* 183 AD2d 244, 248 [1992]). Accordingly, because it was a natural and foreseeable consequence that a prisoner with access to a firearm would use it against a police officer, there is a sufficient connection between the City's violation of Labor Law § 27-a and the death of the two officers in this case to support the legal sufficiency of the jury's verdict (*see Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315 [1980]).

However, while there is sufficient evidence to impose liability under General Municipal Law § 205-e, in my view, the damages awarded were excessive (*see* CPLR 5501 [c]). Accordingly, I would modify the order appealed from by remitting the matter for a new trial on damages unless the plaintiffs stipulate to reduce the verdict.