OPINION OF THE COURT
 

 Read, J.
 

 These appeals involve the tragic deaths of three New York City police officers killed in the line of duty. Plaintiffs seek recovery under General Municipal Law § 205-e, which creates a statutory right of action where an officer’s injury or death is caused by a violation of certain statutes, ordinances, rules, orders and requirements of a governmental entity. In each case, the Appellate Division dismissed plaintiffs’ claims, finding that section 205-e liability could not be sustained. For the reasons that follow, we now affirm in both cases.
 

 I.
 

 A.
 
 McCormick
 

 On April 27, 1988, a team of 19 police officers from the Bronx Narcotics Unit executed a no-knock search warrant for a drug raid at an apartment in Manhattan. The officers, dressed in plain clothes with police badges displayed around their necks or police vests over their clothing, repeatedly yelled “Police, open the door,” as they forced the apartment’s door open with a battering ram. Officer John P Huvane, who wielded the battering ram, rushed into the apartment in the lead as part of the six-
 
 *360
 
 member entry team. He threw the battering ram in the direction of a barking pit bull, later discovered to be tied up, and unholstered his service revolver.
 

 Huvane immediately encountered an unarmed woman, whom he readily apprehended after she had fled to the bedroom in the back of the apartment. He quickly handed her off to other members of the entry team as he caught sight of a second woman, Mercedes Perez, standing behind the bedroom door with a gun in her hand. When Huvane called out “Police. Drop the gun,” Perez, who stood slightly over five-feet tall and weighed approximately 100 pounds, aimed the gun point-blank at Huvane’s head. In the flash that Huvane saw Perez, he did not notice that she was visibly pregnant.
 

 Huvane, who was six-feet, two-inches tall and weighed 210 pounds, initially “swatted” or pushed Perez’s gun away from his face with his hand, as he had been trained to do to protect himself. He did not succeed in disarming her in this fashion, however, and a scuffle ensued. Perez’s gun discharged, causing a burn mark on Huvane’s wrist, and Huvane fired two rounds at Perez. As Perez, gun in hand, continued to “come[ ] at” Huvane, he retreated and bumped up against the bed. Falling off balance, Huvane fired a third round at Perez. Huvane testified that, as he came to rest partway on the bed, he thought for certain that he was about to die.
 

 Officer James P Curran, another member of the entry team, heard the burst of gunfire as he was running into the bedroom behind Huvane, whom he observed “grappling” with Perez. As Huvane was falling backwards toward the bed, Curran stepped between Perez and Huvane and fired two shots at Perez “to stop her from shooting again at Huvane.” Perez slumped forward and Curran caught her and propped her up against the wall, but did not disarm her. After he heard another gunshot, which came from Perez’s direction, Curran flung himself on top of Huvane, who was supine on the bed. Curran noticed Perez, crouched over but moving rapidly, leaving the bedroom, still armed. Perez, who suffered two gunshot wounds, was soon caught and disarmed by another member of the entry team. The time elapsed from the first until the last shot fired was a matter of seconds.
 

 Plaintiffs decedent, Sergeant John F. McCormick, was fatally wounded by a bullet fired from one of the officers’ guns during
 
 *361
 
 their confrontation with Perez.
 
 [1]
 
 This bullet traveled through the bedroom door and lodged in McCormick’s neck. Plaintiff brought a wrongful death action alleging, among other things, that the City was liable for decedent’s death based on General Municipal Law § 205-e. As relevant here, plaintiff predicated section 205-e liability on alleged violations of provisions of the Criminal Procedure Law and the Penal Law relating to the defense of justification, as well as on sections of the Penal Law pertaining to assault, criminally negligent homicide, reckless endangerment and manslaughter.
 

 The City moved for summary judgment and dismissal for failure to state a claim, arguing that the officers were justified in using deadly physical force. Supreme Court granted the City’s motion and dismissed the complaint. Quoting extensively from the officers’ EBT and trial testimony, Supreme Court observed that “[a]s sad as this case is, the police officers who fired had a loaded gun pointed in their direction. In these circumstances there is no issue of fact as to whether the police conduct was legally justified.” The trial court concluded that “in the absence of any contested material issue of fact the use of deadly physical force by the officers, under these circumstances, was justified and not a violation of the Penal Law.”
 

 Observing that the justification statutes “do not establish a standard of care upon which a civil cause of action can be based, but rather a defense to a
 
 criminal
 
 prosecution” (307 AD2d 231, 232 [1st Dept 2003] [emphasis in original; internal quotation marks omitted]), the Appellate Division affirmed on an alternative basis. Specifically, the Appellate Division concluded that “[m]erely an ‘alleged violation’ of [other] provisions of the Penal Law, which are as yet unproven in a criminal proceeding, cannot serve as a predicate for a civil claim under General Municipal Law § 205-e, as a matter of law”
 
 {id.).
 

 B.
 
 Williams
 

 On
 
 November 13, 1989 while assigned to the Queens County District Attorney Detective Squad, Detectives Keith Williams and Richard Guerzon took custody of a prisoner, Jay “Stoney” Harrison, pursuant to a “takeout order,” and transported him from the Rikers Island Correctional Facility to the District At
 
 *362
 
 torney’s (DA) office for a polygraph test. Upon arrival at the DA’s office, Harrison was placed in the Detective Squad’s locker room, which doubled as a detention area. Harrison was seated at the table in the locker room, with one of his hands cuffed to a metal pipe installed for just this purpose. The pipe was mounted several inches above the table’s surface, and ran the table’s length. Despite being handcuffed, Harrison, while left alone, managed to remove a service revolver from one of the nearby lockers and conceal it on himself. On the return trip to Rikers Island, he shot and killed Williams and Guerzon with the stolen revolver.
 
 [2]
 

 Plaintiffs brought separate civil actions alleging, among other things, that the City was liable for decedents’ deaths based on General Municipal Law § 205-e. As relevant here, plaintiffs predicated section 205-e liability on Labor Law § 27-a, entitled “Safety and health standards for public employees,” and Administrative Code of the City of New York §§ 27-127 and 27-128, which require that buildings be maintained in a safe condition and hold owners responsible for such maintenance.
 

 The cases were consolidated and proceeded to trial on April 21, 1999, 10 years after the officers’ deaths. Plaintiffs’ theory was that “the locker room was improperly used as a prisoner detention area and that the prisoner had gained access to the locker containing the gun because its lock was either open or defective” (304 AD2d 562, 563 [2d Dept 2003]). Plaintiffs’ expert, a former assistant chief with the New York City Police Department, opined that the locker room was “[t]otally inadequate” as a detention facility.
 

 The jury found the City liable for violating Labor Law § 27-a as well as the Code provisions, and returned verdicts of $5,260,252 for the Williams plaintiffs, and $8,975,625 for the Guerzon plaintiffs. The City renewed its motion to dismiss for failure to establish a prima facie case, on which the trial court had reserved decision, and moved to set aside the verdict for legally insufficient evidence. Supreme Court denied the motions and the City appealed.
 

 A divided Appellate Division reversed the judgment, on the law, granting the City’s motion to set aside the verdicts and dismissing the complaints. The majority found that there was
 
 *363
 
 no evidence that “the locker room was maintained in an unsafe condition within the meaning of’ Administrative Code §§ 27-127 and 27-128 (304 AD2d at 564). The Appellate Division also found that the hazard causing decedents’ deaths was “the practice of holding prisoners in proximity to lockers where firearms were kept”
 
 (id.
 
 at 565). Accordingly, Labor Law § 27-a (3) (a) (1) was not implicated because it “encompasses physical and environmental hazards in the workplace, not the use to which a room is put”
 
 (id.).
 
 The dissenting Justices agreed with the majority that the Code provisions were not violated, but considered section 27-a (3) (a) (1) applicable because it was not limited to physical and environmental hazards, and placed a general duty on employers to “prevent hazardous conditions from developing, either in employment or the place of employment”
 
 (id.
 
 at 567).
 

 II.
 

 Common law barred a police officer from recovering in tort for injuries suffered in the line of duty
 
 (see Santangelo v State of New York,
 
 71 NY2d 393, 397 [1988]). In 1989, the Legislature modified the common law by adding section 205-e to the General Municipal Law (L 1989, ch 346); and in 1996, the Legislature “largely abolishe[d]” the common law by enacting section 11-106 of the General Obligations Law
 
 (see Giuffrida v Citibank Corp.,
 
 100 NY2d 72, 78 [2003]). The latter provision allows police officers to bring tort claims for most work injuries that occur in the line of duty. Importantly, however, section 11-106 maintains the common-law bar on tort claims against “the police officer’s . . . employer or co-employee” (General Obligations Law § 11-106 [1]). Thus, while a police officer can assert a common-law tort claim against the general public, liability against a fellow officer or employer can only be based on the statutory right of action in General Municipal Law § 205-e.
 

 To make out a claim under section 205-e, a plaintiff must “[1] identify the statute or ordinance with which the defendant failed to comply, [2] describe the manner in which the [police officer] was injured, and [3] set forth those facts from which it may be inferred that the defendant’s negligence directly or indirectly caused the harm”
 
 (see Giuffrida,
 
 100 NY2d at 79 [internal quotation marks omitted]). These appeals involve the first requirement of that standard; namely, whether the defendants failed to comply with a statute or ordinance.
 

 Section 205-e (1) creates a statutory cause of action where a police officer is injured by another’s failure “to comply with the
 
 *364
 
 requirements of
 
 any
 
 of the statutes, ordinances, rules, orders • and requirements of the federal, state, county, village, town or city governments or of any and all their departments, divisions and bureaus” (emphasis added). While this language is seemingly limitless, “it is well settled that the statute cannot reasonably be applied literally in accordance with its broad language. . . . Rather, as a prerequisite to recovery, a police officer must demonstrate injury resulting from negligent noncompliance with a requirement found in a well-developed body of law and regulation that imposes clear duties”
 
 (Galapo v City of New York,
 
 95 NY2d 568, 574 [2000] [internal quotation marks omitted], quoting
 
 Desmond v City of New York,
 
 88 NY2d 455, 463, 464 [1996]). At the same time, a series of amendments to section 205-e teaches us that we should apply this provision “expansively” so as to favor recovery by police officers whenever possible
 
 (see Gonzalez v Iocovello,
 
 93 NY2d 539, 548 [1999]).
 

 In
 
 Galapo,
 
 we held that the City Police Department Patrol Guide cannot give rise to section 205-e liability, primarily because it is not a “duly-enacted body of law or regulation” (95 NY2d at 574), but also because imposing liability based on the Guide would “allow a trier of fact ... to second-guess line-of-duty decisions on matters affecting public safety”
 
 (id.
 
 at 575). In
 
 Desmond,
 
 we similarly refused to predicate section 205-e liability on a City Police Department internal guideline that required police officers to exercise “individual judgment” about the relative safety risks of their actions (88 NY2d at 464).
 

 In
 
 Gonzalez,
 
 however, we found that a violation of section 1104 (e) of the Vehicle and Traffic Law could serve as a predicate for section 205-e liability. That provision creates a privilege exempting drivers of authorized emergency vehicles from certain provisions in the Vehicle and Traffic Law, but “explicitly qualifies that privilege” (93 NY2d at 551) by providing that “the driver of an authorized emergency vehicle [shall not be relieved] from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others” (Vehicle and Traffic Law § 1104 [e]). We distinguished section 1104 from the administrative provisions in
 
 Galapo
 
 and
 
 Desmond
 
 in part because of its nature as a statute enacted by the Legislature. We also stated, however, that unlike the administrative provisions in the other cases, section 1104 “mandates a reasonably defined and precedentially developed standard of care,” and does not require the trier of fact to
 
 *365
 
 “second-guess an officer’s split-second weighing of choices” (93 NY2d at 551).
 

 III.
 

 Against this backdrop, we are asked whether plaintiffs in
 
 McCormick
 
 and
 
 Williams
 
 have established claims under section 205-e premised on alleged violations of the Penal Law and the Labor Law respectively. Our prior cases provide the framework for determining whether these statutes may serve as predicates; however, the question of whether the defendants have “failed to comply with a statute” is not answered merely by interposing a proper predicate. Liability cannot be imposed under section 205-e unless a plaintiff has established that a statute was, in fact, violated. While we hold that the Penal Law is a proper predicate for section 205-e liability, the plaintiffs in
 
 McCormick
 
 did not establish that the Penal Law was violated by Huvane and Curran. Similarly, the plaintiffs in
 
 Williams
 
 failed to establish a violation of Labor Law § 27-a.
 
 [3]
 

 A.
 
 McCormick
 

 Preliminarily, we reject the notion that a section 205-e claim may be premised solely on a violation of the justification defenses found in the Penal Law or the Criminal Procedure Law
 
 (see Brocato v City of New York,
 
 294 AD2d 281, 281-282 [1st Dept 2002] [Penal Law § 35.30 “does not establish a standard of care upon which a civil cause of action can be based, but rather a defense”]). We conclude, however, that a claim may be predicated on a violation of those Penal Law sections that prohibit specific acts. Indeed, we are hard put to find a more “well-developed body of law and regulation that imposes clear duties”
 
 (Galapo,
 
 95 NY2d at 574 [internal quotation marks omitted]). Further, making a conviction prerequisite to a section 205-e claim predicated on the Penal Law conflates the issue of which statutes may serve as predicates with the question of whether a statute has been violated in a particular case. Accordingly, plaintiff may predicate her claims on alleged violations of the assault, homicide, reckless endangerment and manslaughter provisions of the Penal Law. Her challenge lies in demonstrating that the conduct of Huvane and Curran violated these provisions.
 

 
 *366
 
 Plaintiffs burden is further complicated by the fact that Huvane and Curran were acting in the line of duty when McCormick was killed, and contend that they employed the force necessary to defend themselves against what they reasonably believed to be the use or imminent use of deadly physical force
 
 (see
 
 Penal Law § 35.30 [1] [c]).
 
 [4]
 
 Like the administrative materials involved in
 
 Galapo
 
 and
 
 Desmond,
 
 Penal Law § 35.30’s justification defense requires a trier of fact to “second-guess an officer’s split-second weighing of choices.” General Municipal Law § 205-e liability is based on violation of a law that imposes “clear duties,” which cautions against predicating a section 205-e claim on
 
 alleged
 
 Penal Law violations that implicate the justification defense. Mindful of the Legislature’s direction that we construe section 205-e broadly, however, we conclude that a conviction is not necessary to find a violation of the Penal Law for purposes of section 205-e liability. Nonetheless, because the provisions that plaintiff claims were violated require proof beyond a reasonable doubt and even then, otherwise criminal conduct is excused if justified, her burden is substantial in the absence of a conviction.
 

 We hold that where no criminal charges have been brought against a section 205-e defendant, a rebuttable presumption exists that the Penal Law has not been violated. A defendant who has not been charged with a crime is entitled to summary judgment on a section 205-e claim predicated on the Penal Law where a reasonable view of the evidence supports the conclusion either that no prohibited conduct took place, or that a justification defense exists. To defeat the defendant’s motion, a plaintiff
 
 *367
 
 must come forward with compelling evidence demonstrating a material question of fact as to whether the conduct was criminal and not justified.
 

 Here, Huvane and Curran fired their weapons in the line of duty when faced with a criminal suspect poised to shoot a gun at them, which she, in fact, twice discharged. Huvane testified that he feared for his life and thought himself about to die. It is reasonable to conclude, based on these facts, that the use of deadly physical force was necessary for Huvane and Curran to defend themselves from imminent physical harm. It is also reasonable to conclude that neither Huvane nor Curran was “reckless” or “criminally negligent” as those terms are used in the Penal Law
 
 {see
 
 Penal Law § 15.05 [3], [4], requiring a “gross deviation” from reasonable standards).
 

 In opposition to the City’s motion, plaintiff offered the affidavit of a former chief of police of Tallahassee, Florida. Plaintiffs expert opined that the use of deadly force was unreasonable under the circumstances because the officers should have been able to subdue Perez using defensive disarming techniques, given the height and weight differential between Perez and them. This speculative evidence is insufficient to rebut the presumption that the Penal Law was not violated; therefore, summary judgment was properly granted.
 

 B.
 
 Williams
 

 Labor Law § 27-a, known as the Public Employee Safety and Health Act (PESHA), was enacted “to provide individuals working in the public sector with the same or greater workplace protections provided to employees in the private sector under OSHA”
 
 (Hartnett v New York City Tr. Auth.,
 
 86 NY2d 438, 442 [1995]). In implementing standards for PESHA, New York has adopted OSHA’s workplace safety standards
 
 {see
 
 12 NYCRR 800.3).
 

 Plaintiffs do not allege a violation of a specific workplace safety standard. They allege only a violation of the “general duty” clause, which provides that
 

 “[e]very employer shall: (1) furnish to each of its employees, employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to its employees and which will provide reasonable and adequate protection to the lives, safety or health of its employees .... In applying
 
 *368
 
 this paragraph, fundamental distinctions between private and public employment shall be recognized” (Labor Law § 27-a [3] [a] [1]).
 

 We hold that this provision does not cover the special risks faced by police officers because of the nature of police work. The judgments that must be made by police supervisors in minimizing the danger that police officers inevitably face, while at the same time protecting the public, are uniquely sensitive, difficult and important. Police supervisors must decide, among other things, how police officers should use and store their weapons and ammunition; how much security should be provided when prisoners are transported; and where and under what conditions prisoners should be detained. We think it highly unlikely that the Legislature intended the general language of section 27-a to authorize Department of Labor inspectors enforcing PESHA to second-guess the decisions of police supervisors on matters like these.
 

 Balsamo v City of New York
 
 (287 AD2d 22 [2d Dept 2001]) is not to the contrary. There, a police officer was injured in his patrol car in an automobile accident when his left knee allegedly came into contact with a sharp protruding edge of an unpadded computer console mounted off the automobile’s floor. Arguably, under the facts in
 
 Balsamo,
 
 section 27-a applies because PESHA is designed to prevent the type of occupational injury that occurred when the officer was given an improperly equipped vehicle. The injury in
 
 Balsamo
 
 did not arise from risks unique to police work. By contrast, the “occupational” injury the officers sustained here was death at the hands of a prisoner. Important as it is to prevent such tragedies, we rely on the judgment of those supervising the Police Department to do so—not on regulation and oversight by the Commissioner of Labor.
 

 Plaintiffs’ reliance on sections 27-127 and 27-128 of the Administrative Code is equally unavailing. Those provisions require that “[a]ll buildings and all parts thereof shall be maintained in a safe condition” (§ 27-127) and that “[t]he owner shall be responsible at all times for the safe maintenance of the building and its facilities” (§ 27-128). At best, plaintiffs claim that the lock on the locker was broken or open, and the detention cell was not properly configured. The first of these allegations implicates a single item of equipment; the second, the City’s policies and procedures. Neither allegation claims that the building and “facilities” were not maintained in a safe manner.
 

 
 *369
 
 Accordingly, in each case the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges G.B. Smith, Ciparick, Rosenblatt, Graffeo and R.S. Smith concur.
 

 In each case: Order affirmed, with costs.
 

 [1]
 

 . Perez was charged with and tried for various crimes stemming from this incident. At her criminal trial, she denied that she had intentionally fired her gun, which she kept “to intimidate somebody,” but conceded that “it could have gone off.” Perez was acquitted of all crimes related to the death of McCormick, except for criminal possession of a weapon.
 

 [2]
 

 . Harrison was apprehended and convicted of four counts of second-degree murder
 
 (People v Harrison,
 
 207 AD2d 359 [2d Dept 1994],
 
 Iv denied
 
 84 NY2d 936 [1994]).
 

 [3]
 

 . The City originally argued that Labor Law § 27-a (3) (a) (1), the “general duty” clause, was not a proper predicate under section 205-e, but waived this argument on appeal. Accordingly, we decide this appeal by assuming, without deciding, that this particular provision of the Labor Law is a proper predicate.
 

 [4]
 

 . Section 35.30, entitled “Justification; use of physical force in making an arrest or in preventing an escape,” provides that
 

 “1.
 
 A police officer
 
 . . . , in the course of effecting or attempting to effect an arrest, or of preventing or attempting to prevent the escape from custody, of a person whom he reasonably believes to have committed an offense, may use physical force when and to the extent he reasonably believes such to be necessary to effect the arrest, or prevent the escape from custody, or to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force; except that he
 
 may use deadly physical force for such purposes only when he reasonably believes that: . . .
 

 “(c) Regardless of the particular offense which is the subject of the arrest or attempted escape,
 
 the use of deadly physical force is necessary to defend the police officer ... or another person from what the officer reasonably believes to be the use or imminent use of deadly physical force”
 
 (emphasis added).