[898 NYS2d 298]

JEFFREY CONNERY et al., Individually and as Parents and Guardians of KANE CONNERY and Others, Infants, Respondents-Appellants, v COUNTY OF ALBANY et al., Appellants-Respondents.

Third Department, April 1, 2010

**APPEARANCES OF COUNSEL**

*Napierski, Vandenburgh & Napierski, L.L.P.,* Albany (*Shawn T. Nash* of counsel), for appellants-respondents.

*Luibrand Law Firm, P.L.L.C.,* Latham (*Kevin A. Luibrand* of counsel), for respondents-appellants.

**OPINION OF THE COURT**

STEIN, J.

Plaintiff Jeffrey Connery (hereinafter plaintiff), a detective with the City of Albany Police Department, was assigned by the

Chief of Police to assist the Albany County Sheriff's Department with an ongoing gambling wiretap operation. In addition, plaintiff would occasionally assist the Sheriff's Department drug interdiction unit. On September 6, 2007, plaintiff was injured when he was shot in the hand by a Sheriff's Department investigator while assisting the Sheriff's Department with a drug interdiction operation.

On the day that plaintiff was shot, he had reported to the Sheriff's Department to assist with the wiretap operation, but was approached by two Sheriff's Department investigators—defendants Carmen Frangella and Gary McMullen—and asked to assist with the removal of marihuana plants from a rural location in Albany County. When they arrived at the location, they discovered the presence of a man in a cabin on the property. Frangella and McMullen ordered the man out of the cabin and, when he emerged, he was accompanied by his dog—an 80-pound Akita-Shepherd mix. After Frangella attempted to restrain the suspect, the suspect broke free and attempted to flee. When McMullen and Frangella tackled the suspect, the dog attacked plaintiff. Plaintiff was able to get the dog to let go of his arm and had pinned the dog to the ground on his back. Meanwhile, Frangella shot the dog twice. The second shot, in addition to striking the dog, struck plaintiff's hand—nearly amputating his right thumb. As a result, plaintiff sustained serious injuries.

Plaintiff and his wife, derivatively, commenced this action asserting a common-law negligence claim and a claim pursuant to General Municipal Law § 205-e. Plaintiffs also alleged derivative claims on behalf of their children. Following joinder of issue, defendants moved for summary judgment dismissing the complaint. Supreme Court partially granted the motion, dismissing the General Municipal Law § 205-e claim and a loss of consortium claim advanced on behalf of plaintiffs' children. Supreme Court denied the remainder of defendants' motion, finding that the common-law negligence claim and the derivative claim of plaintiff's wife were not barred because defendants were not plaintiff's employer or coemployees and issues of fact existed as to the reasonableness of defendants' conduct. Defendants now appeal from so much of Supreme Court's order as denied their motion with respect to those claims. Plaintiffs cross-appeal from the order insofar as it dismissed their cause of action pursuant to General Municipal Law § 205-e.

Defendants contend that plaintiffs' negligence claim is barred by "the firefighter's rule." That common-law precept histori-

cally barred police officers from recovering in tort for injuries suffered in the line of duty (*see Santangelo v State of New York,* 71 NY2d 393, 397 [1988]; *see also Williams v City of New York,* 2 NY3d 352, 363 [2004]). However, the Legislature has shifted away from the common law in favor of a more remedial policy (*see Giuffrida v Citibank Corp.,* 100 NY2d 72, 76 [2003]) in an attempt to "ameliorate the harsh effects of the firefighter's rule" (*id.* at 77). Thus, police officers may now "seek recovery and damages for on-duty injuries caused by the negligence of *any* person or entity *other than* that police officer's employer or co-employee" (*Padula v County of Tompkins,* 303 AD2d 804, 806-807 [2003] [emphasis added]; *see* General Obligations Law § 11-106 [1]). The issue before us is whether, under the particular circumstances here, plaintiff's relationship with the Sheriff's Department and, likewise, with McMullen and Frangella, constitutes an employment relationship for the purposes of General Obligations Law § 11-106 (1) so as to bar recovery for plaintiff's injuries.

Our primary consideration in interpreting the statute is to "ascertain and give effect to the intention of the Legislature" (McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a], at 177; *see Riley v County of Broome,* 95 NY2d 455, 463 [2000]). While the statutory language must be construed so as to give effect to its plain meaning (*see State of New York v Patricia II.,* 6 NY3d 160, 162 [2006]; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York,* 41 NY2d 205, 208 [1976]; *Matter of New York State Crime Victims Bd. v Gordon,* 66 AD3d 1213, 1214 [2009]), the legislative history of the enactment "is not to be ignored, even if [the] words [of the statute] be clear" (McKinney's Cons Laws of NY, Book 1, Statutes § 124, Comment, at 252; *see Riley v County of Broome,* 95 NY2d at 463; *County of Broome v Badger,* 55 AD3d 1191, 1192-1193 [2008]). As relevant here, inasmuch as the terms "employer" and "employee" are susceptible to different interpretations, they must be evaluated in light of the particular factual circumstances and policy implications surrounding the enactment of the statute (*see generally* McKinney's Cons Laws of NY, Book 1, Statutes § 124, Comment, at 253; *Riley v County of Broome,* 95 NY2d at 463-464).

A review of the legislative history of General Obligations Law § 11-106 (1) reveals that it was enacted to provide an "umbrella of protection" to injured police officers and firefighters while, at the same time, protecting municipalities from liability (Senate Mem in Support, L 1996, ch 703, 1996 McKinney's Session

Laws of NY, at 2634-2635). Notably, whereas the Governor had vetoed a prior version of the bill that would have entirely abrogated the common-law firefighter's rule (see Governor's Veto Message No. 42 of 1995, disapproving 1995 NY Senate Bill S2829, 1995 NY Legis Ann, at 559-560), he approved the current version because it did "not carry with it 'the potential for impairing discipline and the teamwork values that are vital to effective . . . law enforcement' " and provided fiscal protection to municipalities (Governor's Approval Mem, L 1996, ch 703, 1996 McKinney's Session Laws of NY, at 1935-1936, quoting Governor's Veto Message No. 42 of 1995, disapproving 1995 NY Senate Bill S2829; see Galapo v City of New York, 95 NY2d 568, 573-574 [2000]).

■ Here, defendants acknowledge that, for general purposes, plaintiff was an employee of the City of Albany in the traditional sense.* However, plaintiff did not inform the Chief of Police before joining McMullen and Frangella in the drug interdiction operation on the day of his injury, he wore a uniform provided to him by Frangella that said "Sheriff" on it and he concedes that Frangella was "in charge." Moreover, the City and County were clearly working together and there were indicia of joint employment (compare Padula v County of Tompkins, 303 AD2d 804 [2003]). Given these undisputed facts and circumstances, even in the absence of a formal task force (compare Rodriguez v County of Rockland, 43 AD3d 1026, 1028-1029 [2007]), we conclude, for purposes of General Obligations Law § 11-106, that plaintiff was also effectively an employee of the Sheriff's Department—and, hence, a coemployee of McMullen and Frangella—in the context of the operation with which he was assisting them (see id.), thus barring his negligence claim against them. A contrary conclusion would create an atmosphere inducing fear of exposure to liability claims that would inhibit municipalities from working together for purposes of law enforcement and other activities for the protection of the public safety, in violation of the strong public policy in favor of such collaboration.

■ We now turn to plaintiffs' cross appeal. Although General Municipal Law § 205-e provides a statutory right of action for a police officer against a fellow officer or employer notwithstanding the bar of the firefighter's rule to a common-law tort action (see General Municipal Law § 205-e [1]; General Obligations

---

* For example, plaintiff was paid by the City, reported to the Chief of Police and wore his city police badge during the operation.

Law § 11-106 [2]; *Williams v City of New York*, 2 NY3d at 363), defendants have established as a matter of law "either that [they] did not negligently violate any relevant government provision or that, if [they] did, the violation did not directly or indirectly cause plaintiff's injuries" (*Giuffrida v Citibank Corp.*, 100 NY2d at 82; *see Zanghi v Niagara Frontier Transp. Commn.*, 85 NY2d 423, 441 [1995]). The statute relied upon by plaintiffs to support their General Municipal Law § 205-e cause of action—Agriculture and Markets Law § 121 (2)—requires that a police officer who witnesses a dog attack or threaten to attack a person make a complaint to a municipal judge or justice. This statute, which is contained in Agriculture and Markets Law article 7, entitled "Licensing, Identification and Control of "Dogs," and is found within the section entitled "[d]angerous dogs," and establishes the procedures for a judicial determination that a dog is dangerous and imposes liability on dog owners for certain injuries caused by the dog (*see generally* Agriculture and Markets Law § 121). Such statute does not impose a "clear legal duty" on defendants to refrain from taking other immediate action that they deem appropriate under the circumstances prior to reporting a dog attack (*see generally Brinkerhoff v County of St. Lawrence*, 70 AD3d 1272, 1274-1275 [2010]). However, even if we were to conclude that the statute was applicable to plaintiffs' claims here, they have failed to raise a triable issue of fact as to whether defendants' alleged violation of such statute—specifically, their failure to report the attack on plaintiff by the dog—contributed to plaintiff's injuries (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Thus, plaintiffs' General Municipal Law § 205-e claim was properly dismissed.

Plaintiffs' remaining contentions have been considered and found to be unavailing.

SPAIN, J.P., ROSE and KAVANAGH, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially denied defendants' motion for summary judgment; motion granted in its entirety, summary judgment awarded to defendants and complaint dismissed; and, as so modified, affirmed.