OPINION OF THE COURT
 

 Titone, J.
 

 Plaintiff police officer brought this action against defendant New York City to recover for injuries he sustained as a result of a high-speed automobile chase that was allegedly conducted by his partner in violation of internal Police Department guidelines. The sole question before us in this appeal by defendant New York City is whether the particular departmental directive in issue was within the class of "statutes, ordinances, rules, orders and requirements” whose violation can sustain a cause of action under General Municipal Law § 205-e. Concluding that the particular directive in issue is not the kind of "requirement” that the statute contemplates, we hold that plaintiff’s statutory cause of action cannot be upheld.
 

 In the early morning hours of November 6, 1982, plaintiff and his partner, Officer Signoreli, were riding in a radio motor patrol car in Brooklyn when they observed a Cadillac drive across two lanes of traffic and through a gas station located at a nearby intersection in an apparent attempt to avoid the intersection’s red light. The Cadillac made a turn at the intersection, with Officer Signoreli, who was driving the patrol car, following closely behind.
 

 Although Signoreli signalled with his siren for the Cadillac to pull over, the vehicle sped up. In response, Signoreli turned on his turret light and pursued the Cadillac as it gained speed, made numerous turns and went through traffic lights and stop
 
 *460
 
 signs. At one point during the chase, the Cadillac drove into an oncoming traffic lane causing another car in that lane to swerve onto the sidewalk. According to plaintiff, Signoreli followed the Cadillac "at least” once in the wrong direction on a one-way street.
 

 Approximately three or four minutes after the chase began, the Cadillac left the road, went through a gate and drove onto a high school football field. The officers’ car chased the Cadillac as it drove "erratically” and "in circles” at a speed of approximately 15 to 30 miles per hour. The chase then continued back out onto the street. When the patrol car finally reached the Cadillac and drove alongside it, the Cadillac "rammed” the officers’ vehicle, forcing it over two concrete medians. The chase, which had included speeds of up to 70 miles per hour, finally ended when a second collision forced the two vehicles to come to a stop. The Cadillac’s two occupants were arrested on a number of charges, including second degree assault, reckless endangerment and possession of stolen property.
 

 Having sustained injuries as a result of the chase, plaintiff commenced the present action against New York City, his and Signoreli’s employer, alleging that Signoreli had acted in violation of Vehicle and Traffic Law §§ 1111, 1127 (a) and § 1142 (a), as well as of the New York City Police Department’s Chief of Operations Memo No. 3. That internal memorandum, which concerns "high speed auto pursuit,” stated:
 

 "1. Police action frequently requires the pursuit of an automobile at high speed. Due to the inherent dangers in such action, the safety of all persons must be considered before the pursuit decision is reached. Therefore, it is paramount that each officer weigh the seriousness of the offense committed, against the danger to himself and others who may be affected by the pursuit.
 

 "2. Department policy requires an officer to TERMINATE A HIGH SPEED AUTOMOBILE CHASE WHENEVER THE RISKS TO HIS OWN SAFETY AND THE SAFETY OF OTHERS OUTWEIGH THE DANGER TO THE COMMUNITY IF THE SUSPECT IS NOT IMMEDIATELY APPREHENDED.”
 

 The remainder of the memorandum lists the procedures to be followed and a series of "guidelines” for "the information of members of the service who may be required to become involved in a high speed auto chase.” These guidelines mandate
 
 *461
 
 consideration of such nonexclusive factors as the "nature of the offense,” the "time of day,” the "weather conditions,” the "location and population density” of the area, the officer’s "familiarity with the area,” and the "capability and reliability of the vehicle.”
 

 Plaintiff alleged that Signoreli had violated the internal departmental memorandum as well as the cited Vehicle and Traffic Law provisions by engaging in a dangerous, high-speed chase to apprehend the perpetrator of a minor traffic infraction. In support of his theory of liability, plaintiff offered testimony by a veteran police officer, who stated that Memo No. 3’s purpose was "to emphasize” that high-speed pursuit should be undertaken only when there is a' "compelling need for an immediate apprehension,” a formula that does not encompass the apprehension of traffic offenders. Defendant City moved for dismissal, in part on the ground that Memo No. 3 is not a proper predicate for liability under General Municipal Law § 205-e because its only purpose is to provide loose guidelines for discretionary field decisions by police officers. The trial court denied the motion.
 

 The trial culminated in a jury finding that Signoreli had not violated the Vehicle and Traffic Law but had been guilty of violating Chief of Operations Memo No. 3. Echoing its earlier arguments, defendant City moved to set aside the verdict on the ground that the internal memorandum was merely a guideline that "allowed the officerfs] to exercise their discretion.” The trial court denied the motion, and, following a separate trial on the issue of damages, judgment was entered against the City.
 

 On cross appeals, the Appellate Division affirmed the judgment, rejecting the City’s contention that Memo No. 3 was not the kind of departmental rule that General Municipal Law § 205-e contemplates.
 
 *
 
 The City appealed by leave of this Court. We conclude that the Appellate Division’s rejection of the City’s argument was error and that its order should be reversed.
 

 In its appeal to this Court, the City has tendered two discrete arguments, one addressed to the co-worker relationship between plaintiff and the tortfeasor and the other addressed to the type of regulation that the tortfeasor Signoreli is alleged to have breached. The City’s first argument — that General Mu
 
 *462
 
 nicipal Law § 205-e’s cause of action does not extend to' injuries caused by a fellow officer’s negligence — is unpreserved and is therefore not cognizable in this appeal. The remaining preserved issue the City proffers is whether an internal departmental memorandum that provides guidelines for the exercise of due care is the type of governmental "requirement” that can lead to liability under General Municipal Law § 205-e. Resolution of this question requires a brief foray into the history of the "firefighters’ rule” and its recent extension to police officers.
 

 Under the common-law rule, firefighters injured in the line of duty could not recover against the property owners or occupants whose négligence occasioned the fire emergency to which they were responding (see,
 
 Kenavan v City of New York,
 
 70 NY2d 558;
 
 McGee v Adams Paper & Twine Co.,
 
 20 NY2d 921,
 
 affg on opn below
 
 26 AD2d 186). A limited avenue of relief was made available in 1935, however, when the Legislature enacted General Municipal Law § 205-a, which gave firefighters and their survivors a statutory cause of action for line-of-duty injuries "occur[ring] * * * as a result of any * * * culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements” of any level of government and of any governmental department, division or bureau (L 1935, ch 800, § 2, as amended by L 1936, ch 251, § 1).
 

 In
 
 Santangelo v State of New York
 
 (71 NY2d 393), this Court applied the common-law "firefighters’ rule” to police officers injured in the line of duty. We reasoned that the modern public policy rationale for the rule is as applicable to the hazards of police work as it is to the dangers that firefighters face. The members of these uniformed services are employed "precisely because special skills and expertise are required to confront certain hazards * * *, these hazards often arise from negligence, and as a matter of public policy firefighters [and police officers] trained and compensated to confront such dangers must be precluded from recovering damages for the very situations that created a need for their services”
 
 (id.,
 
 at 397;
 
 see also, Cooper v City of New York,
 
 81 NY2d 584 [holding the
 
 San-tangelo
 
 rule applicable to claims arising out of fellow officer’s negligence and out of negligent acts that are "separate and distinct” from the negligence that occasioned the emergency]).
 

 In the wake of the
 
 Santangelo
 
 decision, the Legislature enacted General Municipal Law § 205-e in an avowed effort to afford police officers parity with firefighters (L 1989, ch 346;
 
 *463
 

 see, id.,
 
 Sponsor’s Mem in Support, 1989 NY Legis Ann, at 180; Governor’s Mem approving L 1989, ch 346, 1989 NY Legis Ann, at 182). The new law, which essentially tracked the language of General Municipal Law § 205-a, was intended to "be identical to” that statute
 
 (see,
 
 Sponsor’s Mem,
 
 op. cit.).
 
 Thus, wherever practical and sensible, sections 205-a and 205-e should be construed and applied in the same way.
 

 Of course, the precise identity that section 205-e sponsors apparently envisioned may not always be possible, since the differing natures of firefighters’ and police officers’ work may dictate some variations in application. In the context of a section 205-a claim by a firefighter, for example, we have held that only conduct by property owners relating to the maintenance of premises in a safe condition for firefighters is actionable
 
 (Kenavan v City of New York, supra,
 
 at 566-567). Such a restriction is obviously not appropriate in actions by police officers arising under section 205-e, since police officers’ duties are not as closely tied to "premises” and, in fact, their duties routinely expose them to a host of nonpremises related hazards. It was for this reason that the Legislature amended the statute in 1992 to make clear that it applies to actions for line-of-duty injuries occurring "at any time or place” (L 1992, ch 474;
 
 see, id.,
 
 § 1;
 
 Ruotolo v State of New York,
 
 83 NY2d 248, 255-256).
 

 Nonetheless, despite their minor dissimilarities, the cases construing section 205-a are highly instructive in the construction and application of its sibling provision, section 205-e. One critical interpretive point common to both statutes is that, despite their underlying remedial purposes, neither statute can reasonably be applied literally in accordance with its broad language. As we made clear in
 
 Kenavan v City of New York (supra,
 
 at 565-567), these ameliorative provisions of the General Municipal Law must be construed and applied in light of their specific history and purposes as well as their language
 
 (see also, Ross v Curtis-Palmer Hydro-Elec. Co.,
 
 81 NY2d 494;
 
 Ferres v City of New Rochelle,
 
 68 NY2d 446, 451).
 

 Assuming without deciding that an internal departmental policy memorandum can constitute a "requirement” of a governmental department, division or bureau under General Municipal Law § 205-e in a proper case, we conclude that the particular memorandum at issue here is not within that category. As is plain from the statute’s legislative history, section 205-e was not enacted to give police officers an unrestricted right to recover for all negligently caused line-of-duty injuries. Nor was it intended to give police officers a right to sue for
 
 *464
 
 breaches of any and all governmental pronouncements of whatever type and regardless of how general or specific those pronouncements might be. Rather, the 1989 enactment was intended to provide police officers with an avenue of recourse "where injury is the result of negligent non-compliance with
 
 well-developed bodies of law and
 
 regulation” which "impose
 
 clear
 
 duties” (Mem of State Executive Dept, reprinted in 1989 McKinney’s Session Laws of NY, at 2140, 2141).
 

 Memo No. 3, the governmental pronouncement on which plaintiff relies, does not impose any such "clear [legal] duties.” Nor is it part of a "well-developed bod[y] of law and regulation” with positive commands that mandate the performance or nonperformance of specific acts. Rather, Memo No. 3 merely establishes a general policy against the use of high-speed vehicular pursuit in cases where the safety risks outweigh the law enforcement goal to be served. As such, the policy pronouncement contains no particularized mandates, but instead simply authorizes the officer to exercise a measure of guided discretion within certain specific criteria.
 

 It is true, as plaintiff points out, that Memo No. 3 states that Department policy "requires” an officer to terminate a high-speed pursuit under certain conditions. However, when considered in context, this mandatory term does not convert the fundamentally discretionary nature of the Memo’s instruction into a "requirement” within the meaning of General Municipal Law § 205-e. Although the term "require” is used, the Memo makes the "required” action, i.e., termination of the chase, depend on the pursuing officer’s individual judgment about the relative safety risks and their relationship to the "danger to the community if the suspect is not immediately apprehended.” Thus, despite its reference to a "required” termination of the chase, the Memo does not actually "require” any particular action, nor does it impose a "clear legal duty” on the officers whose conduct it purports to regulate.
 

 Accordingly, we conclude that a claimed "violation” of Memo No. 3 cannot serve as a basis for a cause of action under General Municipal Law § 205-e. Indeed, the contrary conclusion would lead to a situation in which the trier of fact would be called upon to sit in judgment of the wisdom of a police officer’s decision that the pursuit and immediate apprehension of a crime suspect was necessary to the community’s safety. In the absence of a clear legislative expression, we cannot infer that the Legislature intended such a startling result. Nor can we infer that in enacting General Municipal Law § 205-e the
 
 *465
 
 Legislature intended to abrogate the general rule that liability for a colleague’s conduct will not be imposed "where the * * * conduct involves the exercise of professional judgment[, including] * * * making tactical decisions that, in retrospect show poor judgment”
 
 (Kenavan v City of New York, supra,
 
 at 569).
 

 For the foregoing reasons, we hold that the Appellate Division erred in upholding plaintiffs judgment under General Municipal Law § 205-e based on a claimed violation of a governmental "requirement”. Since the departmental directive on which plaintiff relied did not impose any "requirements” and was, in fact, nothing more than a guide for the exercise of an officer’s professional discretion, plaintiff’s statutory cause of action should have been dismissed.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the complaint dismissed.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, etc.
 

 *
 

 Plaintiff appealed claiming that the damage award was inadequate, but the Appellate Division dismissed his appeal.