Smith, J.
(dissenting). The majority holds that a provision of the New York City Police Department Patrol Guide cannot serve as a predicate for a civil action under General Municipal Law § 205-e. Because Patrol Guide Procedure 104-1 (k) (“Use of Firearms”) is part of a well-developed body of law with a particularized mandate, we dissent.
On August 16, 1988, during a buy-and-bust operation, while the police were apprehending several suspects, Sergeant William Martin accidentally shot and killed Officer Joseph Galapo. By verified complaint sworn to on February 22, 1989, Helen Galapo, as administratrix of the estate of Joseph Galapo, and as mother and natural guardian of their three minor children, Daniel J. Galapo, Robert M. Galapo, and Richard B. Galapo, brought an action alleging negligence and wrongful death against the City of New York, the New York City Police Department, and Sergeant William L. Martin in the Supreme Court, Kings County. A verified bill of particulars, dated August 15, 1989, alleged that the defendants were negligent “in cocking said hand gun improperly, negligently and carelessly and in violation of the rules and regulations in the use of a hand gun.”
Supreme Court granted defendants’ motion for summary judgment dismissing the complaint. The Appellate Division reversed, holding “Supreme Court erred in concluding that an alleged violation of the New York City Police Department Patrol *577 Guide procedures concerning the use of firearms could not serve as the basis for an action seeking recovery pursuant to General Municipal Law § 205-e” (219 AD2d 581, 582). The Appellate Division concluded that the broad language of General Municipal Law § 205-e did not preclude the assertion of a claim based upon an alleged violation of an internal police department procedure.
By an amended complaint, the plaintiffs alleged that the defendants were negligent in violating requirements and regulations of the Police Department, including General Municipal Law § 205-e. On November 14, 1997, a jury rendered a verdict in favor of plaintiffs in the sum of $17.9 million. Supreme Court reduced the jury verdict to $5,095,000. The Appellate Division (267 AD2d 349, 350) reversed the judgment and dismissed the complaint, concluding, “The decisions of the Court of Appeals in Gonzalez v Iocovello,[1] Desmond v City of New York[2] and St. Jacques v City of New York,[3] effectively overruled this Court’s decision in Galapo v City of New York [219 AD2d 581].” The Court noted that the only basis for the jury’s determination of liability was a violation of the Patrol Guide.
General Municipal Law § 205-e provides that a police officer can maintain a cause of action where injury or death “occurs directly or indirectly as a result of any neglect, omission, willful or culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state * * * or city governments or of any and all their departments, divisions and bureaus.”[4]
*578 The primary issue on this appeal is whether the Patrol Guide meets the definition of a rule or requirement under General Municipal Law § 205-e. The purpose of the 1989 enactment was to provide police officers injured in the line of duty with the same right of action accorded firefighters in 1935 (see, General Municipal Law § 205-a, adopted L 1935, ch 800; L 1989, ch 346). The statute was enacted in response to this Court’s decision in Santangelo v State of New York (71 NY2d 393, 397), which denied recovery to police officers who were injured while attempting to subdue an escaped mental patient. Based upon public policy, the Santangelo Court concluded that the very nature of police work was to engage in difficult situations for which police officers received special training and additional benefits (71 NY2d, at 398).
In 1992, General Municipal Law § 205-e was amended to make clear that liability for injury or death of police officers was not limited to violations relating to the maintenance and control of premises, which is the requirement for claims by firefighters, but was designed to cover injury or death “at any time or place.” This amendment was meant to clarify for courts that the intent of the Legislature was to allow broad-based recovery when a police officer or firefighter was injured or killed as the result of third-party negligence (see, L 1992, ch 474).
In Desmond v City of New York, citing the legislative history, this Court stated that the purpose of General Municipal Law § 205-e was to provide recourse to a police officer “ ‘where injury is the result of negligent non-compliance with well-developed bodies of law and regulation’ which ‘impose clear duties’ ” (88 NY2d 455, 464; Mem of State Executive Dept, 1989 McKinney’s Session Laws of NY, at 2141). In order for a departmental policy to be a requirement under General Municipal Law § 205-e, the policy must have some historical basis in law, and there must be a particularized mandate or clear legal duty embodied in the procedure which places restrictions on the officer’s ac *579 tions (see, Desmond, supra, at 464). Patrol Guide Procedure 104-1 (k) meets the test set forth in Desmond.
The legislative history of section 205-e demonstrates unmistakably the intent of the Legislature in authorizing lawsuits for injuries to, or the death of, police officers. Less than a year ago, in discussing General Municipal Law § 205-e, this Court noted that since its passage in 1989, the section has been amended on several occasions to answer restrictive court interpretations and to emphasize the legislative intent that the section be interpreted “expansively” (see, Gonzalez v Iocovello, 93 NY2d 539, 548; L 1990, ch 762; L 1992, ch 474; L 1994, ch 664; L 1996, ch 703) (emphasis supplied).
The plain wording of Patrol Guide Procedure 104-1 (k) indicates that it is a requirement of the New York City Police Department. The section reads:
“To minimize the possibility of accidentally discharging a weapon, firearms shall not be cocked and should be fired double action” (emphasis in original).
Plaintiffs expert referred to the Patrol Guide as “the Bible, it is what you go by.” Moreover, it is not disputed that the Patrol Guide contains requirements and regulations for officers which can serve as the basis for discipline and dismissal (see, e.g., People v Feerick, 93 NY2d 433, 442-443; Matter of Williams v Police Dept., 50 NY2d 956). The requirement in question was developed as the result of growing concern in New York State and across the country about unnecessary and unwarranted accidental killings of police officers and suspects being apprehended (see, Tennessee v Garner, 471 US 1, 15-19; McCummings v New York City Tr. Auth., 81 NY2d 923). Robert DiGrazia, plaintiffs expert, and a former Superintendent of Police in St. Louis County, Missouri, and Boston, Massachusetts, testified that the prohibition against cocking of guns evolved during the 1970s and 1980s because of the number of accidental shootings, with most of the injuries occurring to police officers rather than citizens. The end result was the purchase by municipalities of guns which could not be cocked. Such purchases began in New York City in 1987.
Martin Landa, a former police officer and Chairman of the Law Department at the Police Academy, was at one time responsible for all of the legal training of entry level police officers and had written most of Patrol Guide Procedure 104-1 *580 (k). Officer Landa testified to the mandatory nature of the provision for both police officers who were in training and those who had completed it. From the time that an incoming police officer received training at the police academy and during his or her service on the force, adherence to this section of the Patrol Guide was required.[5] Thus the requirement meets the Desmond test of a clear, unequivocal mandate that developed out of a concern over the negligent use of an essential piece of law enforcement equipment — a gun.
The majority writing sets forth a test for determining whether the procedure in question constitutes a qualifying mandate that would serve to impose liability under General Municipal Law § 205-e. The writing indicates that the Department Patrol Guide “is not part of a duly-enacted body of law or regulation” and thus does not give rise to civil liability under the statute (emphasis supplied). The majority appears to adopt a formal legislative/administrative enactment test. The statute imposes no such requirement and further recognizes that “any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments or of any and all their departments, divisions and bureaus” will qualify in defining a claim under the statute (General Municipal Law § 205-e [1]). The language of the statute is all encompassing and clearly can include a rule of a department, such as the Patrol Guide.
The majority writing identifies three reasons why the rule in question does not fall within the sweep of section 205-e. One is that the Patrol Guide is an internal manual and “not a body of law or regulation establishing clear legal duties that should *581 serve as a basis for civil liability of municipalities.” As noted above, the provision in question was developed out of a concern for the very outcome that serves as the basis for this lawsuit— the negligent use of á weapon in a potentially dangerous situation. The manual is significant enough that a violation of it can be grounds for dismissal or discipline and the language of the section in question is mandatory. “[F]irearms shall not be cocked.” The regulation could not be clearer. Furthermore, the record reflects that the City adhered to the prohibition of not allowing a firearm to be cocked by ceasing the purchase of guns that could be cocked prior to the accident.
Second, the majority asserts that allowing the Patrol Guide section in question to serve as a foundation for a section 205-e claim “would additionally allow a trier of fact, using rules the Police Department itself regards merely as ‘a guide,’ to second-guess line-of-duty decisions on matters affecting public safety.” (Majority opn, at 575, citing Desmond, supra. The memorandum in question in Desmond failed as a directive because it contained “no particularized mandates, but instead simply authorizes the officer to exercise a measure of guided discretion within certain specific criteria” id., at 464.) In this case, the statute does not call upon the officer to make a specific, split-second, discretionary decision that could be reviewed for its appropriateness by the trier of fact. The rule mandates that no officer shall cock his or her gun. Judgment in difficult situations is not called for here; the mandate is clear.
Third, the majority concludes its analysis by determining that allowing recovery in this instance would “be at odds with the history and purpose of General Municipal Law § 205-e.” As noted earlier, the purpose of General Municipal Law § 205-e was to ameliorate the Santangelo rule and we have been repeatedly told by the Legislature that the statute is to be applied expansively (see, L 1990, ch 762; L 1992, ch 474; L 1994, ch 664; L 1996, ch 703; see also, Gonzalez, supra, at 548). The majority concludes, without showing how it reached that conclusion, that to afford the officer in this case a cause of action would provide police officers with greater rights than those available to the public. It cites Crosland v New York City Tr. Auth. (68 NY2d 165, 168). Crosland stands for the proposition that common-law liability cannot be imposed upon a municipality based on a breach of a rule which imposes a higher duty than that owed under common law. Here, we are not concerned with a common-law claim but a specific statutory cause of ac *582 tion given to police officers. The fact that the Patrol Guide establishes a specific and mandatory level of conduct with regard to the use of firearms has no correlation to a common-law claim that an individual might have with regard to a claim against a municipality.
As this Court has noted before, “When the Legislature’s words and actions point out the correct interpretative road to follow, there is no justification for a court of law to follow another path” (Schiavone v City of New York, 92 NY2d 308, 317). To our minds the majority has taken the wrong road in its attempt to restrict the sweep of the statute.
Accordingly, we dissent and would reinstate the trial judgment.
Judges Levine, Ciparick and Rosenblatt concur with Chief Judge Kaye; Judge Smith dissents and votes to reverse in a separate opinion in which Judge Wesley concurs.
Order affirmed, with costs.

. 93 NY2d 539

. 88 NY2d 455

. 88 NY2d 920

. “1. In addition to any other right of action or recovery under any other provision of law, in the event any accident, causing injury, death or a disease which results in death, occurs directly or indirectly as a result of any neglect, omission, willful or culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments or of any and all their departments, divisions and bureaus, the person or persons guilty of said neglect, omission, willful or culpable negligence at the time of such injury or death shall be liable to pay any officer, member, agent or employee of any police department injured, or whose life may be lost while in the discharge or performance at any time or place of any duty imposed by the police commissioner * * * or to pay to the spouse and children * * * a sum of money, in case of injury to person, not less than one thousand dollars, and in the case of death not less than five thousand dol *578 lare, such liability to be determined and such sums recovered in an action to be instituted by any person injured or the family or relatives of any person killed * * *
“3. This section shall be deemed to provide a right of action regardless of whether the injury or death is caused by the violation of a provision which codifies a common-law duty and regardless of whether the injury or death is caused by the violation of a provision prohibiting activities or conditions which increase the dangers inherent in the work of any officer, member, agent or employee of any police department.” (General Municipal Law § 205-e.)

. The mandatory nature of Patrol Guide Procedure 104-1 (k) is shown both by the Police Student’s Guide and the Patrol Guide. The Police Student’s Guide reads as follows:
“to minimize the possibility op accidentally discharging a weapon,
FIREARMS SHALL NOT BE COCKED AND SHOULD BE FIRED DOUBLE ACTION.
“There have been tragic incidents in the past where police officers have accidentally discharged their weapon because the hammer was cocked. Considering the possibility of an accidental discharge, the Department mandates that officers fire their weapons double action only.
“example: You are in hot pursuit of a suspect who has just committed a robbery with a firearm. While chasing this suspect you draw your revolver. If you cocked your revolver and then tripped, fell or lost your balance, you or an innocent bystander may accidentally be injured or killed. To prevent this occurrence the Department mandates that NO police officer shall cock his/her weapon” (emphasis in original).
The provision contained in the Police Student’s Guide is carried forward into the Patrol Guide Regulations as Patrol Guide Procedure 104-1 (k).