OPINION OF THE COURT
David R. Demarest, J.
Plaintiff, widow of New York State Trooper David Brinkerhoff, commenced a civil action asserting four causes of action as a result of Brinkerhoff s work-related death. In response to this motion, plaintiff has conceded her claims for punitive damages and pain and suffering pursuant to General Obligations Law § 11-106. The defendants are the St. Lawrence County Probation Department, its director, a probation supervisor, and a probation officer. Defendants move for dismissal of the two remaining causes of action for wrongful death premised upon General Obligations Law § 11-106 and General Municipal Law § 205-e. Brought as a CPLR 3211 dismissal motion, all allegations in the complaint must be accepted as true.
Brinkerhoff, assigned to the New York State Troopers’ Mobile Response Team (MRT), was fatally shot on April 25, 2007, while in the line of duty as his team was attempting to apprehend fugitive Travis Trim. Brinkerhoff and his MRT unit had been dispatched to a home in Margaretville, New York, to search for Trim who, one day prior, shot New York State Trooper Matt Gombosi during a traffic stop. Trim had a criminal history. In August 2005, Trim was convicted of petit larceny in Franklin County, New York, and sentenced to three years of probation. Thereafter, his probation supervision was transferred to St. Lawrence County, New York, where he attended college.
It is alleged that while enrolled in college, Trim violated his probation a number of times from early September 2006 to early November 2006. He was arrested for purchasing alcohol for underage friends, issued an appearance ticket for possession of marijuana on or about October 6, 2006, found in possession of alcohol and marijuana on or about November 1, 2006, and *428 failed to appear for his Probation Department report. Having reported to Trim’s college dorm room on three separate occasions as a result of complaints, the campus police forwarded three incident reports to defendants on November 3, 2006. Trim failed to appear at his previously-scheduled November 3, 2006 probation appointment, and on November 6, 2006, the defendants learned Trim was no longer living on campus, a violation of the terms of his probation.
The St. Lawrence County Probation Department, failing to abide by its own probation violation policies that a memorandum of investigation be provided to the sentencing court within five days of the Probation Department being notified of an arrest, sent a belated violation package to the jurisdictional court on December 18, 2006. Canton Village Justice Michael Crowe signed a declaration of delinquency and issued an arrest warrant on December 29, 2006, which was faxed to the Probation Department on January 2, 2007. Thereafter, plaintiff alleges the defendants failed to properly process Trim’s arrest warrant since it was neither forwarded to the local police nor input into the warrant entry/registrant system by the Probation Department. It is alleged the fax was shredded or destroyed. It is further alleged these acts caused Brinkerhoff s death since these delays permitted Trim to remain at large for months. During oral argument, plaintiffs counsel stated he only recently learned Trim had previously been stopped on the Thruway without incident, and had defendants timely applied for the arrest warrant and properly processed it, Trim could have been successfully taken into custody without event during that traffic stop. This information, he urges, can and should be developed during discovery.
Defendants seek dismissal of the complaint’s first cause of action, citing absence of a wrongful death cause of action in General Obligations Law § 11-106, the absence of a “special relationship” upon which to predicate a duty being owed by defendants to plaintiff, and the existence of intervening and superseding acts which serve to break any causal link between defendants’ conduct and Brinkerhoff s death. Defendants seek dismissal of the third cause of action for wrongful death under General Municipal Law § 205-e upon the basis that no “special relationship” exists, the causal link between defendants’ conduct and Brinkerhoff s death is broken by Trim’s superseding and intervening criminal conduct, and plaintiff has failed to allege adequate predicate statutory violations.
*429 Plaintiff opposes the motion by: disputing her need to prove a “special relationship” for purposes of General Obligations Law § 11-106 liability in order to find a duty was owed to Brinkerhoff, since he was not a member of the general public; arguing there is no requirement to show a “special relationship” exists for General Municipal Law § 205-e liability; asserting the plain language of General Obligations Law § 11-106 creates a wrongful death cause of action; averring that her citation of 9 NYCRR 355.3, 347.4, 348.2, 350.5 and 352.1 (a) and (b) constitutes adequate predicate statutory violations upon which General Municipal Law § 205-e liability may be imposed; noting she has properly pleaded causation under the “directly or indirectly” standard of General Municipal Law § 205-e (1) since she need only establish a “practical or reasonable” connection between the statutory violation and the injury; and arguing that causation issues are properly left to the factfinder such that it would be improper for the court to pass upon defendants’ superseding and intervening acts argument.
All parties allege that a plain reading of General Obligations Law § 11-106 supports their respective positions as to whether a wrongful death cause of action was created. The 1996 statute revived the rights of police officers and firefighters to recover for injuries sustained in the line of duty by abolishing a longstanding common-law doctrine called the “Firefighter’s Rule.’* The statute reads:
“1. In addition to any other right of action or recovery otherwise available under law, whenever any police officer or firefighter suffers any injury, disease or death while in the lawful discharge of his official duties and that injury, disease or death is proximately caused by the neglect, willful omission, or intentional, willful or culpable conduct of any person or entity, other than that police officer’s or firefighter’s employer or co-employee, the police officer or firefighter suffering that injury or disease, or, in the case of death, a representative of that po *430 lice officer or firefighter may seek recovery and damages from the person or entity whose neglect, willful omission, or intentional, willful or culpable conduct resulted in that injury, disease or death.
“2. Nothing in this section shall be deemed to expand or restrict the existing liability of an employer or co-employee at common-law or under sections two hundred five-a and two hundred five-e of the general municipal law for injuries or death sustained in the line-of-duty by any police officer or firefighter.” (Id.)
Plaintiff relies on the statute’s repeated use of the word “death”: “whenever any police officer . . . suffers . . . death . . . and that . . . death is proximately caused, ... in the case of death, a representative of that police officer . . . may seek recovery and damages” (General Obligations Law § 11-106 [1]). To this end, plaintiff urges an expansive reading of the statute to include a wrongful death cause of action.
Also relying on the statute’s verbiage by seizing upon the word “representative” and noting the absence of words connoting heirs, defendants seeks an opposite determination. Namely, it is defendants’ position that this statute only served to reinstate the common-law negligence claims to permit recovery of pain and suffering damages. Differentiating between personal injury claims and wrongful death, defendants note the former is brought in a representative capacity (see EPTL 11-3.1 et. seq.) on behalf of a decedent as a “survival claim,” thus the statute’s use of the word “representative.” The latter, a wrongful death cause of action, however, belongs to the decedent’s beneficiaries to recover for their own pecuniary loss, and thus is brought in their individual capacity. On this point, defendants argue that the statute’s failure to reference either EPTL 5-4.1, which creates a statutory cause of action for wrongful death claims, or to include language of “spouse,” “children,” “parents” and “brothers and sisters,” provides evidence that a wrongful death cause of action was not envisioned by the drafters of General Obligations Law § 11-106. All parties cite to legislative history in support of their respective positions, but no case law is cited to support either position. It is notable, however, that a wrongful death action is not founded upon common law, but rather upon statute. (Carrick v Central Gen. Hosp., 51 NY2d 242, 249-250 n 2 [1980].)
In 1989, the Legislature enacted General Municipal Law § 205-e with the following preamble: “AN ACT to amend the *431 general municipal law, in relation to granting certain police officers or their representatives a cause of action for injury or death” (L 1989, ch 346 [emphasis added].) Thereafter, in 1992, the Legislature added the words “at any time or place” to subdivision (1), expanding the scope of liability, and also added subdivision (2), addressing existing statutory “notice of claim” requirements as a condition precedent to commencement of a special proceeding or cause of action. (L 1992, ch 474, § 2.) In 1996 — at the same time the Legislature created General Obligations Law § 11-106 — the statute was further amended by adding subdivision (3). (L 1996, ch 703, § 2.) General Municipal Law § 205-e specifically provides for monetary recovery by the decedent’s surviving heirs, thus creating a wrongful death cause of action:
“1. In addition to any other right of action or recovery under any other provision of law, in the event any accident, causing injury, death or a disease which results in death, occurs directly or indirectly as a result of any neglect, omission, willful or culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments or of any and all their departments, divisions and bureaus, the person or persons guilty of said neglect, omission, willful or culpable negligence at the time of such injury or death shall be liable to pay any officer, member, agent or employee of any police department injured, or whose life may be lost while in the discharge or performance at any time or place of any duty imposed by the police commissioner, police chief or other superior officer of the police department, or to pay to the spouse and children, or to pay the parents, or to pay the brothers and sisters, being the surviving heirs-at-law of any deceased person thus having lost his life, a sum of money, in case of injury to person, not less than one thousand dollars, and in the case of death not less than five thousand dollars, such liability to be determined and such sums recovered in an action to be instituted by any person injured or the family or relatives of any person killed as aforesaid, provided, however, that nothing in this section shall be deemed to expand or restrict any right afforded to or limitation imposed upon an employer, *432 an employee or his or her representative by virtue of any provisions of the workers’ compensation law. . . .
“3. This section shall be deemed to provide a right of action regardless of whether the injury or death is caused by the violation of a provision which codifies a common-law duty and regardless of whether the injury or death is caused by the violation of a provision prohibiting activities or conditions which increase the dangers inherent in the work of any officer, member, agent or employee of any police department.” (Emphasis added.)
Review of the 1992 legislative provision amending General Municipal Law § 205-e to add the language “at any time or place” explains that the liability imposed by section 205-e
“should not be limited to violations pertaining to the safe maintenance and control of premises. Since our police officers are required to confront dangerous conditions under many and varied circumstances, there is a need to ensure that a right of action exists regardless of where the violation causing injury or death occurs.” (L 1992, ch 474, § 1 [“Legislative intent”].)
Moving forward in time to the Legislature’s 1996 activities in adding General Obligations Law § 11-106 and amending General Municipal Law § 205-e, the preamble of Laws of 1996, chapter 703 states it is “AN ACT to amend the general municipal law and the general obligations law, in relation to the scope of the cause of action afforded for injuries by police officers or firefighters in the line-of-duty and to compensation for injury or death to police officers or firefighters or their estates.” This amendment was required to address the courts’ continued restrictive view of section 205-e’s scope even in the face of the 1992 amendatory language “at any time or place.” The legislative intent related to amending General Municipal Law § 205-e states:
“The legislature finds that the nature of modern police work in this state has exposed our police officers to an unprecedented risk of death and physical injury. In view of this fact, chapter 346 of the laws of 1989 gave injured officers and representatives of deceased officers a right of action against individuals found liable for such deaths or injuries.
“The legislature concludes that the duties of our *433 state’s police officers are performed in a variety of contexts and that the liability imposed pursuant to chapter 346 of the laws of 1989 should not be limited to violations pertaining to the safe maintenance and control of premises. Since our police officers are required to confront dangerous conditions under many and varied circumstances, there is a need to ensure that a right of action exists regardless of where the violation causing injury or death occurs.
“Since the enactment of chapter 474 of the laws of 1992, our courts have continued to differ on the scope of the remedy afforded by chapter 346 of the laws of 1989. This act is intended to ensure once and for all that section 205-e of the general municipal law is applied by the courts in accordance with its original legislative intent to offer an umbrella of protection for police officers, who, in the course of their many and varied duties, are injured by the negligence of anyone who violates any relevant statute, ordinance, code, rule and/or regulation.” (L 1996, ch 703, § 1.)
Clearly this amendment expands liability from that which was previously, narrowly read by the courts to arise only from “premises liability.” Thus, personal injury and wrongful death causes of action are properly premised upon the negligence of anyone violating a relevant statute, ordinance, code, rule and/or regulation.
There exists no legislative intent either immediately preceding or specifically related to creation of General Obligations Law § 11-106. (See L 1996, ch 703, § 5.) Notwithstanding this, Senator Dean Skelos, sponsor of the Senate bill, wrote the Governor’s Counsel, Michael Finnegan, on July 19, 1996, thanking him “for the opportunity to comment on the above referenced legislation [S7303-A] which is now awaiting the Governor’s action” and explaining the bill’s need. (Bill Jacket, L 1996, ch 703.) He characterized the proposed General Municipal Law and General Obligations Law amendments as constituting “a comprehensive solution to the issue of tort recovery for police officers . . . injured in the line-of-duty.” (Id.) Amendment of the General Municipal Law would ensure that future application of General Municipal Law § 205-e would be consistent with the original legislative intent “to provide an umbrella of protection” for police officers injured or killed by a tortfeasor who violates a relevant statute, ordinance, code, rule, regulation or *434 requirement and to restore a police officer’s traditional common-law rights “to pursue negligence claims for damages for injuries or death incurred in the line-of-duty, except as to common-law claims against municipal employers.” (Id.) In speaking on the addition of General Obligations Law § 11-106 to the statutory framework, Senator Skelos stated:
“Through the addition of section 11-106 to the General Obligations law, New York will join the growing list of states that have abolished the ‘firefighter’s rule’ as a defense to a police or firefighter’s common-law cause of action for on-duty injuries. Tortfeasors will no longer escape common-law liability simply because their injured victim happens to be a police officer or firefighter. The public policy of this State, as repeatedly expressed by the Legislature, will thus become law: police officers and firefighters are to recover in tort for their on-duty injuries.” (Id.)
Senator Skelos’s memorandum in support of the amendments to General Municipal Law §§ 205-a (firefighters) and 205-e (police officers) and the addition of section 11-106 to the General Obligations Law addressed each by category. In characterizing the amendments of sections 205-a and 205-e, he stated “this bill further restores the traditional common-law rights of police officers and firefighters to pursue negligence claims for damages for injuries or death incurred in the line-of-duty, except as to common-law claims against municipal employers.” (Senate Mem in Support, 1996 McKinney’s Session Laws of NY, at 2634 [emphasis added].) In discussing the applicability of section 11-106 and the State’s public policy permitting police officers “to recover in tort for their on-duty injuries,” Skelos goes on to explain that section 11-106 would permit the injured party’s employer to continue to assert the “firefighter’s rule” because of “the current financial plight of the State’s municipalities.” (Id. at 2635.)
Assemblyman Eric Vitaliano, Chairman of the Committee on Governmental Employees, also had occasion to write to Michael Finnegan, Counsel to the Governor, on July 19, 1996, urging the Governor’s approval of amendments to the General Municipal Law and General Obligations Law in an effort to finally put to rest the public policy of New York since 1989: permitting police officers and firefighters “to sue for injuries sustained in the line of duty caused by the tortious conduct of third-party wrongdoers.” (Bill Jacket, L 1996, ch 703.) He explained the bill as:
*435 “amending 205-e and 205-a of the General Municipal Law [to] ensure[ ] that police officers and firefighters injured in the course of duty have an unambiguous cause of action where their injuries are caused by the violation of any relative statute, code, rule or regulation . . . [and] by adding Section 11-106 to the General Obligations Law [to] restore[ ] the common law right of recovery afforded to every citizen to firefighters and police officers to recover damages proximately caused by the negligence of any entity not a municipal employer.” (Id.)
The Governor’s memorandum of approval, dated October 9, 1996, is consistent with the Senate and Assembly’s understanding that General Obligations Law § 11-106 would permit firefighters and police officers to recover damages for line-of-duty injuries: “Under section 11-106, firefighters and police officers would be able to recover [damages for injuries caused by negligence in the very situations that create the occasion for their services] from persons other than their employers and co-employees.” (Governor’s Approval Mem, at 1, Bill Jacket, L 1996, ch 703, 1996 McKinney’s Session Laws of NY, at 1935.) As to General Municipal Law §§ 205-a and 205-e, the Governor’s memorandum states:
“firefighters and police officers (and their survivors) are authorized to recover damages for line-of-duty injuries and deaths ‘occurring] ... as a result of any culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements’ of governments and their departments, divisions and bureaus.” (Id. [emphasis added].)
In light of the foregoing, no wrongful death claim may be made under General Obligations Law § 11-106. As set forth in the legislative history and supporting memoranda, the purpose of the statute was to revive a police officer’s right to sue for injuries sustained in the line of duty caused by the tortious conduct of third-party wrongdoers. Thus, had plaintiff timely filed a notice of claim pursuant to General Municipal Law § 50-e and filed the action within the one-year-and-90-day statute of limitations period applicable to decedent’s personal injury cause of action (General Municipal Law § 50-i), General Obligations Law § 11-106 would have permitted her, as decedent’s representative, to pursue a common-law negligence cause of action for his pain and suffering, as a survival claim. (See EPTL 11-3.2 *436 [b].) Construing the statute in this manner is further supported by the Court of Appeals decision of Giuffrida v Citibank Corp. (100 NY2d 72 [2003]), wherein the Court not only set forth the legislative history surrounding the creation of and amendments to both General Municipal Law §§ 205-a and 205-e, but also noted:
“the lawmakers enacted General Obligations Law § 11-106, which largely abolishes the firefighter’s rule by giving firefighters and police officers a cause of action in negligence for injuries suffered while in the line of duty (except as to actions against municipal employers and fellow workers) (see L 1996, ch 703, § 5).” (100 NY2d at 78.)
Plaintiff is left with a single cause of action, that being one for wrongful death brought pursuant to General Municipal Law § 205-e. In Galapo v City of New York (95 NY2d 568 [2000]), the Court of Appeals reaffirmed the applicability of its earlier holding in Desmond v City of New York (88 NY2d 455 [1996]), notwithstanding the 1996 legislative amendments of General Municipal Law §§ 205-e and 205-a and General Obligations Law § 11-106:
“Although section 205-e purports to authorize recovery for noncompliance with ‘any’ governmental requirement, it is well settled that the statute cannot ‘reasonably be applied literally in accordance with its broad language’ (Desmond v City of New York, supra, 88 NY2d, at 463; see also, Governor’s Mem approving L 1996, ch 703, 1996 McKinney’s Session Laws of NY, at 1936-1937). Rather, as a prerequisite to recovery, a police officer must demonstrate injury resulting from negligent noncompliance with a requirement found in a ‘well-developed body of law and regulation’ that ‘imposes clear duties’ (see, Desmond v City of New York, supra, 88 NY2d, at 464; see also, Patrolmen’s Benevolent Association Letter in Support, Bill Jacket, L 1989, ch 346 [statute authorizes cause of action based on disregard of ‘a local statute or ordinance’]; Sponsor’s Mem, Bill Jacket, L 1992, ch 474 [‘It was clearly the intent of the Legislature, in enacting General Municipal Law § 205-e, that this Section apply to the violation of any statute or other law’]) ....
“Permitting the recovery of damages by a police officer based on a fellow officer’s violation of Proce *437 dure 104-1 (k) [of the New York City Police Department Patrol Guide] would ... be at odds with the history and purpose of General Municipal Law § 205-e. The overriding purpose behind adoption of General Municipal Law § 205-e was to ameliorate the effect of the common-law rule that disadvantaged police officers who, unlike members of the general public, were barred from recovery for injuries resulting from risks inherent in their job. The statute[ ] was not . . . intended to give police officers greater rights and remedies than those available to the general public . . .
“In sum, General Municipal Law § 205-e was not intended to allow suits by fellow officers or their survivors for ‘breaches of any and all governmental pronouncements of whatever type’ (Desmond v City of New York, supra, 88 NY2d, at 464).” (Galapo at 574-576.)
In seeking dismissal of this final cause of action, defendants argue that plaintiff cannot show that the defendants: negligently failed to comply with a requirement found in a “well-developed body of law and regulation,” owed Brinkerhoff a special duty, and caused Brinkerhoff s death since his death was the result of Trim’s intervening and superseding criminal acts. Plaintiff argues that her citation of 9 NYCRR 355.3, 347.4, 348.2, 350.5 and 352.1 (a), (b) constitutes a “well-developed body of law and regulation,” and that she may predicate her General Municipal Law § 205-e cause of action upon violations of the St. Lawrence County probation violation policies all as set forth in her pleadings. Moreover, plaintiff argues she need not demonstrate the existence of a “special duty” since Brinkerhoff was not a member of the general public and General Municipal Law § 205-e does not impose such a requirement. Lastly, plaintiff argues that Trim’s actions did not constitute a superseding event which severed the causal connection between Brinkerhoff s fatal injuries and defendants’ negligence since Trim’s actions were not a new and independent force which was not set in motion by defendants’ own wrongful acts.
The importance of the above set forth legislative history takes on additional significance while discussing the applicability of General Municipal Law § 205-e to the facts at hand. Of paramount importance is the recognition that the original intent of this particular statute and its several amendments was to legislatively overrule the Court of Appeals holding in Santangelo v State of New York (71 NY2d 393 [1988]), which extended *438 the “firefighters’ rule” to police officers. The effect, therefore, was to place police officers in the same shoes as any member of the public, such that they would no longer be deprived of their ability to commence negligence claims for their line-of-duty injuries. To accomplish its ends — abolition of an antiquated rule which excepted police officers and firefighters who were injured while acting within the scope of their duties as the only public employees who could not sue their tortfeasors — an expansive reading of the statute is urged. An expansive reading, however, does not mean limitless. The statute permits a cause of action where the police officer is injured or dies as a result of negligent failure to comply “with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments or of any and all their departments, divisions and bureaus.” (General Municipal Law § 205-e [1].)
Plaintiff cites to multiple parts of 9 NYCRR: parts 347 “PROBATION MANAGEMENT,” 348 “CASH [sic should read CASE] RECORD MANAGEMENT,” 350 “INVESTIGATIONS AND REPORTS,” 352 “VIOLATIONS OF PROBATION,” and 355 “PROBATION OFFICERS AS PEACE OFFICERS” to support her General Municipal Law § 205-e cause of action. Additionally, plaintiff alleges that defendants’ delay in notifying the sentencing court and jurisdictional court of Trim’s arrest within five business days after gathering the facts violated St. Lawrence County’s own policies. On this last point, plaintiff alleges the County’s policies qualify as predicates to impose General Municipal Law § 205-e liability.
Citing the New York Court of Appeals decision in Giuffrida v Citibank (supra), wherein the merits of a firefighter’s analogous General Municipal Law § 205-a claim were discussed in the context of a motion to dismiss, the Third Department in Aldrich v Sampier (2 AD3d 1101 [2003]) set forth the following as elements of a General Municipal Law § 205-e claim: identification of the statute or ordinance defendant violated; description of the manner in which the police officer was injured; and a proffer of facts creating the inference that the defendant’s actions either directly or indirectly caused the police officer’s harm.
9 NYCRR 347.4, entitled “Rules,” is contained within part 347, “PROBATION MANAGEMENT,” and sets forth general guidelines for probation departments: organizational chart; job descriptions; planning/maintaining organization and manage *439 ment; planning and evaluating probation programs; recruitment selection and promotion; collaboration with criminal justice and related community services; written statements of policies and procedures; regular staff meetings; employee performance evaluation program; and public periodic progress reports on probation operations. 9 NYCRR 348.2, entitled “Rules,” is contained within part 348, “CAS[E] RECORD MANAGEMENT,” and sets forth the information which should be contained within the probation case files and file management procedures. 9 NYCRR 350.5, entitled “Investigations and reports, generally,” contained within part 350, “INVESTIGATIONS AND REPORTS,” requires probation investigations and reports to be impartial and fair, distinguish between fact and professional assessment, and report the source of relevant information. 9 NYCRR 352.1, entitled “Rules,” is contained within part 352, “VIOLATIONS OF PROBATION.” Section 352.1 (a) requires each local probation director to establish local written procedures governing handling of probation violations and court notification of such. Section 352.1 (b) requires court notification by the probation department within seven business days upon learning of a criminal conviction or determination of absconder status or significant violation of technical conditions of probation. 9 NYCRR 355.3, entitled “Requirements for policies and procedures for probation officers acting as peace officers,” is contained within part 355, “PROBATION OFFICERS AS PEACE OFFICERS,” and requires each director of probation to create, distribute, and ensure compliance with a written policy for probation officers acting as peace officers, the execution of warrants, and the prohibition of use/carrying/possession of firearms while on duty without specific written authorization by the director of probation.
The only regulation cited in plaintiff’s complaint which imposes a clear duty is found at 9 NYCRR 352.1 (b): “In the absence of court direction, a court shall be notified upon a conviction of crime, absconder status, or a significant violation of technical conditions of probation, within seven business days of the probation department’s knowledge of the conviction or determination of absconder status or significant violation.” Similarly, the St. Lawrence County probation violation policies require notification within five business days. While there is a real question that the County’s own written probation policies constitute part of a “well-developed body of law and regulation” upon which to predicate General Municipal Law § 205-e liability, *440 for the reasons that follow (discussing 9 NYCRR 352.1 [b]), plaintiffs cause of action premised upon either would fail for lack of causation.
The pleading contains a recitation of facts which describes the manner in which Brinkerhoff was injured. The issue to be determined on this motion to dismiss is whether plaintiff has set forth facts from which it may be inferred that the defendants’ negligence directly or indirectly caused Brinkerhoff s harm. The statute’s “directly or indirectly” language (General Municipal Law § 205-e [1]) has been held to constitute a lesser standard of proof than that of proximate cause: “Proving that the defendant’s violation was an ‘indirect cause’ does not require the same amount of proof as proximate cause in common-law negligence, but requires a practical or reasonable connection between the statutory or regulatory violation and the injury (see Giuffrida v Citibank Corp., supra at 81).” (Aldrich, 2 AD3d at 1103.)
The facts in Aldrich (ruling on summary judgment motions) involved a police officer making an unannounced U-turn into moving traffic to pursue a reckless driver. In completing his U-turn, the police officer was hit by a motorist. The police officer commenced a General Municipal Law § 205-e action against the reckless driver as well as the motorist. Finding neither Vehicle and Traffic Law § 1129 (following too closely) nor § 1144 (a) (failure to yield to emergency vehicle) to apply to the motorist, Supreme Court’s dismissal of the General Municipal Law § 205-e claim against the motorist was affirmed. The General Municipal Law § 205-e claim as against the reckless driver was, however, reinstated on appeal. The Third Department found an indirect connection between the reckless driver’s statutory violation and the police officer’s injuries sufficient to create a jury question regarding sufficiency of the “connection”: “[his] conviction for reckless driving established a statutory violation. This violation of law led plaintiff, as a police officer, to respond and pursue [him]. While attempting to turn the police vehicle to begin pursuit, the accident occurred.” (Aldrich at 1103.) In explaining what is intended by “indirect cause,” the Court of Appeals has stated:
“ ‘indirect causation’ involves a somewhat less than direct and unimpeded sequence of events resulting in injury. Whereas ‘direct causation’ requires that the defendant’s conduct be a substantial causative factor (see Nallan v Helmsley-Spear, Inc., 50 NY2d *441 507, 520 [1980]), an ‘indirect cause’ is simply a factor that — though not a primary cause — plays a part in producing the result. . . .
“[T]he substantial case law that has developed on the subject holds that a plaintiff need only establish a ‘practical or reasonable connection’ between the statutory or regulatory violation and the claimed injury (see Mullen v Zoebe, Inc., 86 NY2d 135, 140 [1995]; Zanghi, 85 NY2d at 441).” (Giuffrida at 80-81.)
There is no view of the facts of this case that would serve to establish that defendants’ failure to obey 9 NYCRR 352.1 (b) or county probation policies constituted an “indirect cause” of Brinkerhoff s injuries. While it is true that delay of the arrest warrant may have permitted Trim to remain at large for several months, it was Trim’s criminal act in shooting Trooper Gombosi that brought Brinkerhoff and his MRT unit — prepared to confront Trim who was then known to be armed and violent — to the home in Margaretville, New York. Defendants’ delay in seeking an arrest warrant beyond seven business days (or, according to written county policies, five business days) of it having ascertained knowledge of Trim’s significant violation of his probation conditions was not a factor which indirectly produced this tragic result. Unable to plead this causative element, plaintiffs General Municipal Law § 205-e cause of action fails and is properly dismissed.
Having dismissed plaintiffs remaining two wrongful death causes of action on other grounds, it is unnecessary for the court to address whether a “special duty” must be shown in order to premise a tort action upon negligent discharge of ministerial duties against a governmental entity (and its employees) under either a General Municipal Law § 205-e or General Obligations Law § 11-106 cause of action. It is noted, however, that while neither General Municipal Law § 205-e’s language nor the cases analyzing General Municipal Law §§ 205-e and 205-a claims engage in a discussion of “special relationship,” defendants suggest the courts’ lack of such discussion resulted from the cases involving an employer/employee relationship, making “[t]he ‘special relationship’ a given.” It is important to note that the legislative history surrounding the enactment of and amendments to General Obligations Law § 11-106 and General Municipal Law §§ 205-e and 205-a was for the express purpose of abolishing the firefighter’s rule by giving firefighters *442 and police officers a cause of action in negligence for injuries suffered while in the line of duty. Nothing in the legislative history — which was intended to, once and for all, fix the disparity in treatment amongst public employees — would appear to have intended to give police officers and firefighters rights greater than the public at large. It would appear, then, that the “special duty” inquiry would be applicable to either claim.
Defendants’ motion is granted and the complaint is dismissed.

 The “firefighter’s rule” was
“grounded on the policy that — unlike members of the general public — firefighters [and police officers] are specially trained and compensated to confront hazards and therefore ‘must be precluded from recovering damages for the very situations that create a need for their services’ (see, Santangelo v State of New York, [71 NY2d 393, 397 (1988)]).” (Galapo v City of New York, 95 NY2d 568, 573 [2000].)